CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO. 12-1501                                    DIVISION " "

EMILY YUJA

VERSUS

LOUISIANA MEDIA COMPANY, L.L.C.,
BEBE FRANCIS AND JOE COOK

SECTION 15

FILED: _____

DEPUTY CLERK

## PETITION

NOW COMES, through undersigned counsel, claimant, Emily Yuja ("Yuja"), an individual of the age of majority residing in Jefferson Parish, Louisiana, who, with respect, represents as follows:

1.

Made defendants herein are:

a) Louisiana Media Company, L.L.C. (the "LMC"), d/b/a/ WVUE, a limited liability company doing business in the State of Louisiana;

b) Bebe Francis ("Francis"), an individual of the age of majority, upon information and belief domiciled in Orleans Parish, Louisiana; and

c) Joe Cook ("Cook"), an individual of the age of majority, upon information and belief domiciled in Orleans Parish, Louisiana.

## VENUE

2.

Venue is proper in Orleans Parish as the acts complained of occurred in this parish.

## FACTS

3.

Yuja was employed as the traffic manager at WVUE for thirty-three (33) years, from October of 1978 until February 15, 2011. LMC purchased WVUE in July of 2008 and, as such, has been Yuja's employer since that time. Francis, sales manager, was Yuja's direct supervisor at WVUE. Cook serves as general manager of WVUE.



EXHIBIT A

VERIFIED
Angela Davis
Deputy Clerk
2/15/12

4.

Not once throughout her employment with WVUE did Yuja ever receive a negative performance review. Multiple managers and supervisors for whom Yuja worked praised her work and, as a result thereof, she was nominated for Traffic Manager of the year multiple times and received the award twice. Throughout the term of her employment, Yuja was able to perform her job functions and did so in an exceptional manner.

5.

In 2008, Yuja began experiencing health problems which manifested itself in the form of uncontrolled periods of sleeping during the day. In collaboration with her doctors, Yuja underwent multiple tests and treatments in order to correct her condition. Yuja advised LMC of each diagnosis and treatment. Yuja was eventually diagnosed with sleep apnea and diabetes, among other things.

6.

While seeking treatment for her health problems, Yuja experienced times when she would fall asleep at work without her knowledge. When she was observed sleeping, Francis would at times awaken Yuja by banging on her wall, physically shaking her or screaming at her. This harassment caused Yuja serious anxiety and rendered her condition worse. In addition, it has recently been discovered that Francis and Cook would also take pictures of Yuja sleeping and email these embarrassing pictures to one another and to the station's controller, Patrice Gunter ("Gunter"), without Yuja's knowledge. Yuja has been further humiliated by these revelations.

7.

On January 31, 2011, Yuja visited her primary care physician in connection with her health problems. Yuja's physician directed her to take additional time off to treat her sleeping disorder. Yuja advised Francis of her doctor's orders on February 2, 2011.

8.

Yuja returned to work on February 7, 8 and 9, 2011. On February 10, 2011, Yuja informed Francis and Gunter that she had a doctor's appointment the following day for the purpose of seeking additional treatments for her sleep disorder. As a result, Yuja was sent home early on that day.

2

9.

On February 11, 2011, Yuja visited the Ochsner Sleep Clinic. After that visit, Yuja received a note from her doctor advising that Yuja was actively seeking treatment for her sleep disorder and that it was recommended she take vacation time while Yuja monitored her response to the treatment (the "Doctor Note").

10.

Yuja presented the Doctor Note to Francis and advised that she would like to take leave for a couple of weeks in order to monitor the new treatment. Yuja suggested that, as she had weeks of unused vacation time, she use that time instead of taking unpaid medical leave. Francis approved the request, but ordered Yuja to begin the leave immediately. Yuja inquired as to whether it would be possible for her to work from home as she had done in the past, but Francis responded that company policy prohibited employees on medical leave from working from home. No one at LMC advised Yuja of her rights under the Family Medical leave Act ("FMLA").

11.

Yuja remained on leave February 14, 2011. On February 15, 2011, Yuja received a phone call from Gunter, asking her to come in for a meeting that day. Yuja complied and met with Gunter and a representative of Human Resources for the New Orleans Saints. During that meeting, Gunter advised Yuja that her employment was being terminated because Yuja had allegedly been making "mistakes". When Yuja inquired as to what mistakes she had made, Gunter could not provide an answer.

12.

Eight days later, on February 23, 2011, Yuja received a packet of emails allegedly outlining "mistakes" LMC claims she had made. Prior to February 15, 2011, Yuja never received a negative performance evaluation, was never advised that her performance was unsatisfactory, and was never advised that her job was in jeopardy.

13.

Following her discharge, Yuja's position was immediately advertised on WVUE's website. Yuja's position has been assumed by her former assistant, a substantially younger employee.

14.

After discharge, Yuja applied for unemployment benefits with the Louisiana Workforce Commission ("LWC"). Initially, the LWC denied Yuja's benefits due to the fact that LMC claimed Yuja was discharged for misconduct under La. Rev. Stat. 23:1601.2. Yuja appealed the decision and her benefits were granted after a hearing with the administrative law judge on August 18, 2011. LMC appealed that decision and the Louisiana Board of Review remanded the case back to the Appeals Tribunal due to an incomplete record. As a result, an additional hearing was held on December 7, 2011. After hearing, the administrative law judge once again rendered a decision in Yuja's favor on December 14, 2011 finding, in pertinent part, as follows:

> [Yuja] kept her employer aware of her health problems....[Yuja's] doctor wanted her to take a couple of weeks off to try to adjust to the medicine and the use of the c-pap machine to sleep with. The claimant put in for two weeks of vacation. Her employer did not advise her that she could take leave under the Family Medical Leave Act. Her two weeks of vacation was approved. The claimant asked if she could work from home during these two weeks but this request was denied. The claimant was told that no one on a medical leave was allowed to work from home.
>
> The claimant was discharged on February 15, 2011 for making errors. She had not been reprimanded or warned that her job was in jeopardy prior to her discharge. She had not received a written evaluation since 2008 but Ms. Francis, her supervisor, told her that she was one of their best employees. The claimant had discussed her sleep problem with Ms. Francis and Ms. Gunter in May of 2010 and they both told her they were satisfied with her work.

LMC has once again appealed that decision and a determination from the Louisiana Board of Review is pending.

15.

As a result of LMC's conduct, both throughout her health problems and afterward, she has experienced emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary losses.

16.

Moreover, at the age of sixty-nine (69), it is extremely unlikely Yuja will be able to find any employment, let alone one that will provide her with similar pay and benefits.

17.

Yuja sent a demand letter to LMC on March 17, 2011 detailing her claims, but LMC and Yuja have been unable to resolve same. Exhibit "A".

## COUNT ONE: VIOLATION OF THE
## FAMILY MEDICAL LEAVE ACT ("FMLA")

18.

Under the FMLA, Yuja was entitled to a maximum of twelve (12) weeks of leave in order to treat a "serious health condition". The FMLA prohibits employers from interfering with an employee's exercise of her rights to seek leave under the FMLA. As such, LMC was prohibited from discriminating or retaliating against Yuja for exercising her legal rights to seek medical leave.

19.

LMC's actions of discharging Yuja for taking leave to treat her serious health condition were in direct violation of the FMLA. Yuja's sleep disorder qualifies as a serious health condition protected by the FMLA. LMC was fully aware of Yuja's condition at all times and was given a copy of the Doctor Note confirming her need to take leave. The temporal proximity of Yuja's actions of requesting leave and LMC's actions of discharging her while on leave establish a causal relationship between the two.

20.

Pursuant to the FMLA, Yuja is entitled to damages equal to the amount of any wages, salary, benefits, or other compensation denied or lost by reason of LMC's violation. In addition, Yuja is entitled to liquidated damages equal to the sum of wages, salary, benefits, attorney's fees and costs, and expert witness fees.

## COUNT TWO: VIOLATION OF THE
## AMERICANS WITH DISABILITIES ACT ("ADA")

21.

The ADA provides that no covered entity shall discriminate against a qualified individual with a disability. Such discrimination includes the discharge of an employee due to her disability. The ADA also provides protection to an employee from harassment based on her disability.

22.

Yuja's sleep disorder qualifies as a "disability" within the provisions of the ADA. As such, she was entitled to be free of discrimination because of her disability.

23.

Yuja's disability did not render her unqualified for her position. She continued to perform in an exemplary manner throughout her employment.

24.

Despite the fact that LMC was notified of Yuja's disability and attempts at treatment, Yuja was subjected to continuous harassment by Francis.

25.

By harassing Yuja because of her disability, and by discharging her for that reason, LMC has violated the ADA and is liable for damages, applicable penalties, attorney's fees and costs.

## COUNT THREE: VIOLATION OF THE LOUISIANA EMPLOYMENT DISCRIMINATION LAW ("LEDL")

26.

Under the LEDL, no otherwise qualified disabled person shall be subjected to discrimination in employment and an employer shall not discharge or otherwise discriminate on the basis of a disability that is unrelated to the individual's ability to perform the duties of a particular job or position.

27.

Yuja's sleep disorder qualifies as a "disability" under the provisions of the LEDL. As such, she was entitled to be free of discrimination because of her disability.

28.

Yuja's disability did not render her unqualified for her position. She continued to perform in an exemplary manner throughout her employment.

29.

Despite the fact that LMC was notified of Yuja's disability and attempts at treatment, Yuja was subjected to continuous harassment by Francis.

30.

The LEDL also makes it unlawful for an employer to discharge an employee or otherwise discriminate against her because of the employee's age.

31.

By harassing Yuja because of her disability, and by discharging her for her disability and her age, LMC has violated the LEDL and is liable for compensatory damages, back pay, benefits, front pay, attorney's fees and costs.

## COUNT FOUR: TORT CLAIMS

32.

Cook and Francis have engaged in tortious conduct against Yuja including, but not limited to, the torts of invasion of privacy and the intentional infliction of emotional distress by their acts of photographing Yuja without her knowledge, publishing such photographs, and causing Yuja extreme emotional distress and anguish, embarrassment, humiliation, loss of enjoyment of life, insecurity and anxiety with the knowledge that such damages would result from their acts. As such, both Cook and Francis are liable for damages in tort.

WHEREFORE, Emily Yuja prays that there be judgment rendered in her favor and against Louisiana Media Company, L.L.C. for all damages arising out of violations of the FMLA, ADA, LEDL, and against Bebe Francis and Joe Cook for damages arising out of their tortious conduct and for any other relief deemed appropriate by the Court.

Respectfully submitted,

ORRILL, CORDELL & BEARY, L.L.C.

_____
W. Christopher Beary (Bar #22253)
Angel L. Byrum (Bar #30423)
330 Carondelet St.
New Orleans, Louisiana 70130
Telephone: (504) 299-8724
Facsimile: (504) 299-8735

**Counsel for Emily Yuja**

SHERIFF PLEASE SERVE:

LOUISIANA MEDIA COMPANY, L.L.C.
Through its Registered Agent
CT Corporation System
5615 Corporation Blvd., Suite 400B
Baton Rouge, LA 70808

-and-

BEBE FRANCIS
1025 S. Jefferson Davis Parkway
New Orleans, LA 70125

-and-

JOE COOK
1025 S. Jefferson Davis Parkway
New Orleans, LA 70125

ORRILL, CORDELL, & BEARY, L.L.C.
ATTORNEYS AT LAW
330 CARONDELET ST.
NEW ORLEANS, LOUISIANA 70130

(504) 299-8724
FAX: (504) 299-8735
TOLL FREE: (866) 832-2417
WWW.OCBLAW.COM

R. RAY ORRILL, JR.¹
LESLIE A. CORDELL
W. CHRISTOPHER BEARY²
JEFFREY L. OAKES³
ᵇBOARD CERTIFIED CIVIL TRIAL ADVOCATE
  BY THE NATIONAL BOARD OF TRIAL ADVOCACY
²ALSO CERTIFIED PUBLIC ACCOUNTANT
  INACTIVE STATUS
³ALSO LICENSED IN NORTH CAROLINA
⁴ALSO LICENSED IN GEORGIA

ANGEL L. BYRUM
DAVIDE A. ROSIGLIONI⁴
ALEX L.M. DUCROS

March 17, 2011

<u>Via Certified Mail-Return Receipt Requested</u>
<u>No. 70012510000753986709</u>

Human Resources
LOUISIANA MEDIA COMPANY, L.L.C.
1025 S. Jefferson Davis Parkway
New Orleans, Louisiana 70125

    Re:    Ms. Emily Yuja

Dear Sir/Madam:

       This office has been retained by Emily Yuja ("Ms. Yuja") to pursue claims against Louisiana Media Company, L.L.C. ("LMC") for wrongful termination in violation of federal and state anti discrimination laws.

       As a preliminary matter, Ms. Yuja has not been paid for three days of vacation,[1] week of February 7-11, 2011. Pursuant to La. R.S. 23:631(A)(1)(a), Ms. Yuja is entitled to receive her unpaid wages (in this case, unpaid vacation) by no later than March 1, 2011 (fifteen (15) days following the date of her discharge). As such, the amount is due immediately. Please note that La. R.S. 23:632 renders any employer who fails to comply with the provisions of R.S. 23:631 liable to the employee for ninety (90) days of wages, or for the full wages from the time of demand until paid. Should LMC fail to pay Ms. Yuja's wages, our client will initiate suit to recover same, from the date of demand (March 17, 2011) until paid, and will seek reasonable attorneys' fees in connection with her collection efforts[2] to collect payment.

       In addition to not being paid, Ms. Yuja was discharged from her position as Traffic Manager in violation of federal and state anti discrimination laws; namely, the Family Medical Leave Act ("FMLA"), the American with Disabilities Act ("ADA"), the Age Discrimination Employment Act ("ADEA"), and the Louisiana Employment Discrimination Law ("LEDL").

       Ms. Yuja held the position of Traffic Manager at LMC for a period of thirty three (33) years. During that time, Ms. Yuja performed her work functions in an exemplary manner. Not once during the thirty three

---

[1] Ms. Yuja received a paycheck on February 28, 2011. That paycheck shows that Ms. Yuja was paid for the work days of February 7, 8, and 9 and was paid for seven (7) days of vacation. Ms. Yuja then received a check on March 11, 2011 which showed that she was paid for one (1) week vacation. Pursuant to representations made by Patrice Gunter, Ms. Yuja was entitled to three (3) weeks of vacation. As such, three (3) days of vacation remain outstanding for Ms. Yuja. That amount is due under La. R.S. 23:631.

[2] Attorneys' fees and cost are recoverable for violation by the employer of the provisions of La. R.S. 23:632.





Louisiana Media Company, L.L.C.
March 17, 2011
Page 2 of 7

(33) years that Ms. Yuja was employed, did she ever receive a negative performance evaluation. Multiple managers and supervisors whom Ms. Yuja had the pleasure of working under, always spoke highly of her and considered her work performance to be outstanding. In fact, Ms. Yuja's work was so well regarded that she was assigned the important task of logging all of the promotions that were to air during the Superbowl between the Pittsburgh Steelers and the Green Bay Packers, which took place on February 6, 2011. Ms. Yuja's supervisor contacted her the day before (while she was out on medical leave) and asked her to change the logs for the Superbowl, (the most televised event in the country), which was set to run form 10:00 a.m. through the end of the day. Such a task would not have been given to an underperforming employee. Further undermining LMC's position on Ms. Yuja's performance is the fact that she was named <u>Traffic Manager of the Year twice</u> when Fox 8 was owned by Emmis. Mr. Joe Cook, the current General Manager of LMC, nominated Ms. Yuja twice for the award.

Since late 2009, Ms. Yuja has been treated for a sleep disorder that prevented her from getting any rest and hindered her ability to concentrate. After battling with her condition for months, on January 31, 2011, Ms. Yuja visited her primary care physician. Following that visit, Ms. Yuja received a note directing her to take additional time off to treat her sleeping disorder. Soon after, on February 2, 2011, Ms. Yuja informed her immediate supervisor, Bebe Francis ("Ms. Francis"), of her doctor's orders for time off.

Ms. Yuja returned to work on February 7, 8 and 9, 2011. On Thursday, February 10, 2011, Ms. Yuja informed Ms. Francis and Patrice Gunter ("Ms. Gunter") that she had a doctor appointment the following day, and the purpose of that appointment was to seek additional treatment related to her sleep disorder. As a result, Ms. Yuja was sent home at 3 p.m. The following day, on February 11, 2011, Ms. Yuja visited with Dr. Stuart Busby, of the Ochsner Sleep Clinic. After that visit, she received a note from Dr. Busby, which she then showed to Ms. Francis. The note stated: "Ms. Yuja is seeing me in sleep clinic for difficulty with excessive daytime sleepiness. She is actively following a medical treatment regimen. I have advised her to consider taking vacation time while she monitors her response to treatment" (the "Doctor Note").

Ms. Yuja presented the Doctor Note to her supervisor, Ms. Francis, and advised her that she would like to take leave for a couple of weeks in order to monitor the new treatment and latest medication that she had just received. Instead of requesting formal leave under the FMLA, Ms. Yuja suggested that it would be better to use her accumulated vacation time. Ms. Francis approved the request but ordered Ms. Yuja to go home because she wanted the leave to begin immediately. Ms. Yuja inquired as to whether it would be possible for her to perform her work functions from home but Ms. Francis responded that "it was the policy of LMC to not allow employees on medical leave to work from home." Ms. Yuja remained on medical leave on February 14, 2011.

On the morning of February 15, 2011, Ms. Yuja received a telephone call from Ms. Gunter, asking her to come for a meeting scheduled the same day. Ms. Yuja complied with the request and arrived at LMC's office between 11:00 a.m. and 12:00 p.m. When she arrived, she met with Ms. Gunter and a representative of Human Resources for the New Orleans Saints. Interestingly, Ms. Francis (Ms. Yuja's supervisor), was not present for that meeting. During that meeting, Ms. Gunter delivered the news to Ms. Yuja that she was being terminated because Ms. Yuja had, allegedly, been making "mistakes." When Ms. Yuja requested an example of the "mistakes," LMC's representatives could not provide a single example. Instead, about eight (8) days later, on February 23, 2011, Ms. Yuja received a packet of emails outlining "mistakes" that her supervisors, Ms. Francis and Ms. Gunter, claim Ms. Yuja made.

 

Louisiana Media Company, L.L.C.
March 17, 2011
Page 3 of 7

Prior to the meeting of February 15, 2011, Ms. Yuja never received a negative performance evaluation nor was she ever advised that her performance was unsatisfactory in any manner. The only difficulties that Ms. Yuja had experienced at work were due to her health condition, for which she had been seeking treatment for months and was the reason for her request to take medical leave.[3] Instead of supporting Ms. Yuja's dedication and attempts to treat her condition, LMC retaliated against her by discharging her from the position of Traffic Manager.

<u>RETALIATION IN VIOLATION OF THE FAMILY MEDICAL LEAVE ACT ("FMLA")</u>

Under the FMLA, Ms. Yuja was entitled to a maximum of twelve (12) weeks of leave in order to treat a "serious health condition."[4] The FMLA prohibits employers from interfering with an employee's exercise of her rights to seek leave under the FMLA. As such, LMC was prohibited from discriminating or retaliating against Ms. Yuja for exercising her legal rights to seek medical leave.

LMC's actions of discharging Ms. Yuja for taking leave to treat her serious health condition were in direct violation of the FMLA. Ms. Yuja's sleep disorder qualifies as a serious health condition protected by the FMLA.[5] LMC was fully aware of Ms. Yuja's condition as she presented notes from her treating physicians confirming her need to take leave. The temporal proximity of Ms. Yuja's actions of requesting leave and LMC's actions of discharging her while on leave are legally sufficient to establish a causal relationship between LMC's retaliatory acts of discharging Ms. Yuja as a result of taking medical leave.[6]

Pursuant to the FMLA, Ms. Yuja is entitled to recover damages from LMC. She is entitled to damages equal to the amount of any wages, salary, benefits, or other compensations denied or lost to such employee by reasons of the violation.[7] In connection with awarding damages for violation of the FMLA, courts also

---

[3] Under federal law, an employee is not specifically required to mention the term "FMLA Leave" in order to qualify for protection under the FMLA. See *Manuel vs. Westlake Polymers Corp.*, 66 F.3d 758 (5th Cir. 1995) (where the 5th Circuit held that an employee is not required to invoke the statute's protection expressly when notifying the employer of the need for leave due to a serious health condition).

[4] 29 U.S.C. § 2612(a)(1)(B).

[5] Louisiana federal courts have also concluded that sleep disorders or sleep apnea can be a condition protected pursuant to the provisions of the FMLA. See *Russo v. Jefferson Parish Department of Water*, 1997 WL 695602 (E.D. La. 1997). Also, every Circuit, including the 5th Circuit, that has addressed the issue has concluded that sleeping is a major life activity and, thus, protected under the ADA. See, e.g., *EEOC v. Chevron Phillips Chemical Company*, 570 F.3d 606 (5th Cir. 2009); *Desmond v. Mukasey*, 530 F.3d 944, 953 (D.C.Cir.2008); *Nadler v. Harvey*, 2007 WL 2404705 (11th Cir. 2007) (unpublished); *Burks v. Wis. Dep't of Transp.*, 464 F.3d 744, 755 (7th Cir.2006); *Boerst v. Gen. Mills Operations, Inc.*, 25 Fed. Appx. 403 (6th Cir.2002) (unpublished); *EEOC v. Sara Lee Corp.*, 237 F.3d 349, 352-53 (4th Cir.2001); *Pack v. Kmart Corp.*, 166 F.3d 1300, 1305 (10th Cir.1999); *McAlindin v. County of San Diego*, 192 F.3d 1226, 1234 (9th Cir.1999).

[6] See *Tapia v. Michaels Stores, Inc.*, 553 F. Supp. 2d 708 (W.D. TX 2008), (where the district court held that the fact that a mere two days had lapsed between the termination of plaintiff's FMLA leave and the discharge was sufficient to establish a causal relationship between the discharge and plaintiff's exercise of his FMLA rights).

[7] *See* 29 U.S.C. § 2617(A).

Louisiana Media Company, L.L.C.
March 17, 2011
Page 4 of 7

routinely award front pay to the claimant for five (5) years and up to 17-20 years.[8] In addition, Ms. Yuja is entitled to liquidated damages equal to the sum of wages, salary, or benefits, attorneys' fees and costs, and expert witness fees.[9]

In addition to any damages and penalties that Ms. Yuja is entitled to recover pursuant to the provisions of the FMLA, Ms. Yuja is entitled to recover against LMC for its violations of the provisions of the ADA.

## VIOLATION OF THE AMERICAN WITH DISABILITIES ACT ("ADA")

The American with Disabilities Act ("ADA")[10] provides that, "no covered entity shall "discriminate" against a qualified individual with a disability because of the disability of such individual in regard to, inter alia, "the hiring, advancement, or discharge of employees ... and other terms conditions, and privileges of employment."[11] The ADA also provides protection to an employee for harassment based on a disability.[12]

Louisiana law also provides protection to an employee against discrimination based on a disability. Under the LEDL, "no otherwise qualified disabled person shall, on the basis of a disability, be subjected to discrimination in employment" and an employer **shall not discharge** or otherwise discriminate against an otherwise qualified disabled person on the basis of a disability which is unrelated to the individual's ability to perform the duties of a particular job or position."[13]

Ms. Yuja's sleep disorder qualifies as a "disability" within the provisions of the ADA and the LEDL.[14] As such, she was entitled to be free of discrimination because of her disability. Ms. Yuja's disability did not render her unqualified for her position. She continued to perform in an exemplary manner throughout the

---

[8] *See Williams v. Rubicon, Inc.*, 808 So.2d 52 (La. App.1st 2002) (where the court found that the award of front pay for over twenty years for termination in violation of the FMLA was not an abuse of discretion); *See also DeRoach v. Delchamps Inc.*, 397 F.2d at 822, (five year award of front pay appropriate); *Gotthardt v. National Railroad Passenger Corp.*, 191 F.3d 1148 (9th Cir. 1999), (eleven year award of front pay appropriate); *Hukkanen v. Int'l Union of Operating Engineers, Hosting and Portable Local No. 101*, 3 F.3d 281 (8th Cir. 1993) (ten years of front pay warranted); *Tyler v. Bethlehem Steel Corporation*, 958 F.2d 1176 (2d Cir. 1992)(front pay award for seventeen years equivalent to the work life expectancy of the plaintiff, found to be appropriate).

[9] *See* 29 U.S. § 2617(A)(iii).

[10] 42 U.S.C. § 12102 *et seq.*

[11] 42 U.S.C.§ 12112(a).

[12] *Flowers v. S. Reg'l Physician Servs. Inc.*, 247 F.3d 229, 235-36 (5th Cir.2001).

[13] La. R.S. 23:323.

[14] *EEOC*, 570 F.3d 606; *Desmond v. Mukasey*, 530 F.3d at 953 (D.C.Cir.2008); *Nadler*, 2007 WL 2404705; *Burks*, 464 F.3d at 755; *Boerst*, 25 Fed. Appx. 403; *EEOC*, 237 F.3d at 352-53; *Pack*, 166 F.3d at 1305 (10th Cir.1999); *McAlindin*, 192 F.3d at 1234; *Colwell*, 158 F.3d at 643.

entire time. The fact that Ms. Yuja was in charge of organizing and entering all the necessary information needed to handle the station's promotions during the Superbowl is only more evidence of her qualifications for the position.

Instead of making a reasonable accommodation (or any accommodation for that matter) in connection with Ms. Yuja's disability, LMC did just the opposite; it constantly humiliated and harassed Ms. Yuja, and in the end, illegally discharged her. Ms. Yuja was subject to continuous daily harassment by her supervisor, Ms. Francis. Ms. Francis would harass Ms. Yuja by banging on her wall and constantly scream at her anytime Ms. Yuja presented any signs of the need for sleep. This harassment caused Ms. Yuja, a committed 33-year employee, serious anxiety and fear that rendered her condition worse.

By harassing Ms. Yuja because of her disability, and by discharging her for that reason, LMC has violated the ADA and, thus, is liable for damages pursuant to the provisions of the ADA and LEDL.

### AGE DISCRIMINATION

Ms. Yuja is also entitled to recover damages from LMC as a result of discrimination based on age. The ADEA makes it unlawful for an employer to "discharge any individual or otherwise discriminate against any individual…because of such individual's age."[15] The LEDL also makes it unlawful for an employer to "discharge any individual or otherwise discriminate against any individual … because of the individual's age."[16]

Ms. Yuja was discharged from her position because of her age. Following her discharge, her position was immediately advertised on Fox 8's website. As such, there was no intention to downsize. Further, Ms. Yuja's position has been assumed by her former assistant, Ms. Hillary Richier, a substantially younger employee, who is approximately forty-five (45) years of age.[17] In addition, Ms. Pat Dougherty, who previously occupied the position of commercial copier and who was approximately sixty-five (65) years of age, was also dismissed from her position. That position was subsequently filled by someone around 24-28 years of age, but not prior to Ms. Francis advising our client that a prior applicant for that same position was just "too old" and that the place needed some "younger blood."

As a result of LMC's violation of the ADEA, Ms. Yuja is thus entitled to recover compensatory, punitive damages, and attorneys' fees for LMC's violations of the ADEA and the LEDL.[18]

---

[15] 29 U.S.C. § 621 *et seq.*

[16] La. R.S. 23:312.

[17] Under the Supreme Court decision of *O'Connor vs. Consolidated Coin Caterers Corp.*, 517 U.S. 308 (1996), the more reliable indicator of age discrimination is that the employee was replaced by someone who is substantially younger rather than someone who is not a member of the protected class under the ADEA.

[18] Louisiana law also makes it illegal for an employer to discriminate against the employee because of her age. *See* La. R.S. 23:323.

 

Louisiana Media Company, L.L.C.
March 17, 2011
Page 6 of 7

### DAMAGES

As a result of LMC's actions, Ms. Yuja is entitled to compensatory damages (including back and front pay) and punitive damages.[19] Under federal law, punitive damages are allowed when the entity engages in a discriminatory practice with malice or with reckless indifference to the federally protected rights of an aggrieved individual.[20] Further, La. R.S. 23:303 allows Ms. Yuja to recover damages, including back pay, benefits, front pay, reasonable attorney fees, and court costs for LMC's violations of the provisions of LEDL. In addition, state law provides no limitation on the award for punitive damages.

Pursuant to the aforementioned provisions, Ms. Yuja is entitled to recover damages for emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses.[21] Her losses have been and are expected to continue to be considerable. At this time, based upon an anticipated five (5) years of remaining work life, Ms. Yuja's losses can be calculated as follows:

- Lost Wages                                $5,000
- Future Losses (Front Pay)                 $280,000[22]
- 401(K) Contributions                      $6,000
- Humiliation and Loss
  of Reputation                             $75,000
- Attorneys' Fees                           $40% of recovery
- Additional Damages
  pursuant to the FMLA                      $500,000
- Punitive Damages                          $700,000-$1.5MM[23]

---

[19] 42 U.S.C. § 1981(a) provides for the right of recovery of compensatory damages in cases of discrimination based on an individual's disability or age. It provides that "in an action brought by a complaining party under the powers, remedies, and procedures set forth in the Civil Rights Act of 1964 [42 U.S.C.A. §§ 2000(e)(5) or 2000(e)(16)] (as provided in §107(a) of the Americans with Disabilities Act of 1990 (42 U.S.C. §12117(a)), and § 794a(a)(1) of Title 29, respectively) against a respondent who engaged in unlawful intentional discrimination, the complaining party may recover compensatory and punitive damages … in addition to any relief authorized by § 706(g) of the Civil Rights Act of 1964..."

[20] 42 U.S.C. § 1981a.

[21] *Id.*

[22] *See Williams* 808 So.2d 52; *DeRoach*, 897 F.2d at 822; *Gotthardt*, 191 F.3d 1148; *Hukkanen*, 101, F.3d 281; *Tyler*, 958 F.2d 1176.

[23] Several cases have found that punitive damages are equivalent to 2-4 times the award for compensatory damages. *See Bellows v. Amoco Oil Company, et al.*, 118 F.3d 268 (5th Cir. 1997) (where a jury returned a verdict for $50,000 in general damages and $225,000 in punitive damages in connection with the suit against Amoco Oil on the basis that defendant discriminated against him by terminating or changing their right to a contract in violation of 42 U.S.C. § 1981. The decision was subsequently reversed on legal grounds and the quantum issue was not addressed); *E.E.O.C. v. E.I. Dupont De Nemours & Co.*, 480 F.3d 724 (5th 2007) (where a jury found that plaintiff was discharged in violation of the ADA and awarded her $91,000 in back pay, $200,000 in front pay, and $1,000,000 in punitive damages which the district court reduced to $300,000 in accordance with the statutory caps); *Douglas v. DynMcDermott Petroleum Operations*

 

Louisiana Media Company, L.L.C.
March 17, 2011
Page 7 of 7

Based on these numbers, Ms. Yuja can anticipate a recovery in excess of $2.5MM. Ms. Yuja has suffered a tremendous loss because of her termination by LMC as a result of her disability and age. At the age of 69, it is extremely unlikely that she will be able to find any employment, let alone one that will provide her with similar pay and benefits. The humiliation and harassment that she suffered because of her condition has been painful and completely unnecessary.

Ms. Yuja dedicated thirty-three (33) years of outstanding service to LMC as Traffic Manager (later Traffic Manager). She was rewarded by getting thrown to the curb for having a condition for which she had no control of and for being too old. She has been treated extremely unfairly and is entitled to compensation under state and federal law.

Ms. Yuja has authorized me to offer a settlement to LMC on all issues and claims for $975,000. **This offer does not include Ms. Yuja's claims for unpaid wages under La. R.S. 23:631 and La. R.S. 23:632, which are due immediately.** Please provide a response to this offer. Should I not receive a response by Monday, March 28, 2011, we will proceed with filing a formal complaint with the Equal Employment and Opportunity Commission ("EEOC") and a lawsuit to recover damages legally due to Ms. Yuja.

With kindest personal regards, we are

Sincerely,

W. Christopher Beary
Davide A. Rosiglioni

WCB:dar

cc:   **Via Email Only**
      Emily Yuja

---

*Company*, 144 F.3d 364 (5th Cir. 1998) (where a jury returned a verdict for plaintiff, an in-house counsel with defendant corporation, in the amount of $238,840 in compensatory damages and $375,000 in punitive damages in connection with plaintiff's race and sex discrimination claims under Title VII, claims for defamation, intentional infliction of emotional distress and gender discrimination. The court subsequently amended the judgment to conform with the statutory cap); *Barrios v. Kody Marine, Inc., et al.*, 2000 WL 775067 (E.D. La. 2000) (where a jury returned a verdict finding defendant liable for $25,000 in compensatory damages and $100,000 in punitive damages in connection with plaintiff's claims for hostile work environment and sexual harassment); *Breaux v. City of Garland, et al.*, 205 F.3d 150 (5th Cir. 2000) (where a jury awarded plaintiff, a police officer, actual damages exceeding $500,000 and ordered each individual defendant to pay $5MM in punitive damages to each plaintiff for claims of retaliation against the city following and as a result of plaintiff's allegations of public corruption in the police department).

ATTORNEY'S NAME: Beary, William  22253
AND ADDRESS:    330 CARONDELET ST.
                New Orleans    LA  70130

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS
STATE OF LOUISIANA

NO:   2012 — 01501    2    DIVISION: A    SECTION: 15

YUJA, EMILA VERSUS LOUISIANA MEDIA COMPANY, L.L.C.   E TAL

## CITATION

TO: COOK, JOE
THROUGH:
1025 S. JEFFERSON DAVIS PARKWAY

NEW ORLEANS    LA    70125

486-6161

2012 FEB 20 P 3:02  RECEIVED

**YOU HAVE BEEN SUED:**

You must either comply with the demand contained in the petition
FOR DAMAGES W/EXHIBITS ATTACHED

a certified copy of which accompanies this citation, or file an answer or other legal pleading in the office of the Clerk of this Court, Room 402, Civil Courts Building, 421 Loyola Avenue, New Orleans, LA, within fifteen (15) days after the service hereof under penalty of default

### ADDITIONAL INFORMATION

Legal assistance is advisable. If you want a lawyer and can't find one, you may call the New Orleans Lawyer Referral Service at 504-561-8828. This Referral Service operates in conjunction with the New Orleans Bar Association. If you qualify, you may be entitled to free legal assistance through the New Orleans Legal Assistance Corp. You may call them at 800-624-4771 or 504-525-4431.

**********COURT PERSONNEL ARE NOT PERMITTED TO GIVE LEGAL ADVICE**********

IN WITNESS HEREOF, I have hereunto set my hand and affix the seal of the Civil District Court for the Parish of Orleans, State of LA    February 15, 2012    .

Clerk's Office, Room 402, Civil Courts          DALE N. ATKINS, Clerk of
421 Loyola Avenue                               The Civil District Court
New Orleans, LA                                 for the Parish of Orleans
                                                State of LA
                                                by _____
                                                       Deputy Clerk

### SHERIFF'S RETURN
(for use of process servers only)

| PERSONAL SERVICE | DOMICILIARY SERVICE |
|---|---|
| On this 7 day of March 2012 served a copy of the w/i petition FOR DAMAGES W/EXHIBITS ATTACHED | On this ___ day of ___ served a copy of the w/i petition FOR DAMAGES W/EXHIBITS ATTACHED |
| On COOK, JOE | On COOK, JOE |
| THROUGH: Bebe Francis (Program Director) | THROUGH: by leaving same at the dwelling house, or usual place of abode, in the hands of ___ a person of suitable age and discretion residing therein as a member of the domiciliary establishment, whose name and other facts connected with this service I learned by interrogating HIM / HER the said ___ COOK, JOE |
| Returned same day K Claiborne No. 348 Deputy Sheriff of Orleans Mileage: $___ | being absent from the domicile at time of said service. Returned same day No. ___ Deputy Sheriff of ___ |

/ ENTERED /
PAPER ___ RETURN
SERIAL NO. ___ DEPUTY ___ PARISH

VERIFIED
KM 3/9/12

ATTORNEY'S NAME: Beary, William #2253
AND ADDRESS: 330 CARONDELET ST.
New Orleans   LA 70130

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS
STATE OF LOUISIANA

NO:   2012 — 01501   3   DIVISION: A   SECTION: 15

YUJA, EMILA VERSUS LOUISIANA MEDIA COMPANY, L.L.C. E TAL

## CITATION

486-6161

TO: FRANCIS, BEBE
THROUGH:
1025 S. JEFFERSON DAVIS PARKWAY

NEW ORLEANS   LA   70125

YOU HAVE BEEN SUED:

You must either comply with the demand contained in the petition
FOR DAMAGES W/EXHIBITS ATTACHED

2012 FEB 20 P 3:0 RECEIVED

a certified copy of which accompanies this citation, or file an answer or other legal pleading in the office of the Clerk of this Court, Room 402, Civil Courts Building, 421 Loyola Avenue, New Orleans, LA, within fifteen (15) days after the service hereof under penalty of default

### ADDITIONAL INFORMATION

Legal assistance is advisable. If you want a lawyer and can't find one, you may call the New Orleans Lawyer Referral Service at 504-561-8828. This Referral Service operates in conjunction with the New Orleans Bar Association. If you qualify, you may be entitled to free legal assistance through the New Orleans Legal Assistance Corp. You may call them at 800-624-4771 or 504-525-4431.

*********COURT PERSONNEL ARE NOT PERMITTED TO GIVE LEGAL ADVICE*********

IN WITNESS HEREOF, I have hereunto set my hand and affix the seal of the Civil District Court for the Parish of Orleans, State of LA   February 15, 2012   .

Clerk's Office, Room 402, Civil Courts
421 Loyola Avenue
New Orleans, LA

DALE N. ATKINS, Clerk of
The Civil District Court
for the Parish of Orleans
State of LA
by _____
Deputy Clerk

### SHERIFF'S RETURN
(for use of process servers only)

**PERSONAL SERVICE**

On this 7 day of March, 2012
_____ served a copy of the w/i petition
FOR DAMAGES W/EXHIBITS ATTACHED

On FRANCIS, BEBE

THROUGH: IN person

Returned same day
K. Claiborne   No. 346
Deputy Sheriff of Orleans

Mileage: $ _____

/ ENTERED /
PAPER  9256
RETURN
SERIAL NO.   DEPUTY   PARISH

**DOMICILIARY SERVICE**

On this ____ day of ____
_____ served a copy of the w/i petition
FOR DAMAGES W/EXHIBITS ATTACHED

On FRANCIS, BEBE

THROUGH:

by leaving same at the dwelling house, or usual place of abode, in the hands of _____
a person of suitable age and discretion residing therein as a member of the domiciliary establishment, whose name and other facts connected with this service I learned by interrogating HIM / HER the said _____
FRANCIS, BEBE

being absent from the domicile at time of said service.
Returned same day
No. ____
Deputy Sheriff of ____

TRUE COPY VERIFIED
3/9/12